RAWSON, Respondent, vs. MILWAUKEE MUTUAL LIFE IN-
SURANCE COMPANY, Appellant.

*November 11—November 28, 1902.*

*Life insurance: Benefit associations: Vested interest of beneficiary: Evidence: Falsity of statements in application: Declarations of assured.*

1. The beneficiary in a benefit certificate issued by a fraternal order has so far a vested interest therein that the prior declarations of the assured are not admissible in evidence to prove falsity of the statements in the application, unless they were made at or about the time of the application and were so closely related with and explanatory of some act or fact showing the then condition of the health of the assured as to be a part of the *res gestæ.*

2. Declarations not admissible under the above rule may be admissible to prove prior knowledge on the part of the assured of the falsity of some statement in the application, where such prior knowledge is a material fact and there is substantive evidence of the falsity of the statement.

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Affirmed.*

This is an action upon a benefit certificate issued November 5, 1897, by the Fraternal Alliance Life Insurance Association upon the life of one Francis L. Rawson in favor of the plaintiff, the wife of said Francis. It appears that the defendant in this action is the successor of, and has assumed all the obligations of, the said Fraternal Alliance. Francis L. Rawson died January 8, 1901, and due proofs of death were made. The defense alleged is that Rawson made a false statement in his application for insurance, and that it was agreed in and by the application that if any false statements were made therein the policy shall be forfeited. The particular statement alleged to have been false was his answer in the negative to the question whether he had ever had the disease called "colic."

Upon the trial the defendant, in order to prove the falsity of the statement, offered in evidence a written application for insurance made by Francis L. Rawson to the Royal League October 6, 1894, in which he was asked whether he had ever had painter's or lead colic, and to which he answered, "No, but five years ago had two attacks of colic called by the doctor (Saunders, of Kenosha, Wis.) bilious colic." This evidence was objected to, and ruled out by the court, and, there being no other evidence of the falsity of the application, a verdict for the plaintiff for the full amount of the policy was directed, and from judgment thereon the defendant appeals.

For the appellant there was a brief by *Chapin & Stebbins,* and oral argument by *A. K. Stebbins.*

For the respondent there was a brief by *Kearney, Thompson & Myers,* and oral argument by *T. M. Kearney.*

WINSLOW, J.  While the contract on which this action is brought is called a policy of insurance, it is in fact a benefit certificate issued by a fraternal order to one of its members, and contains a provision by which the insured member is allowed at any time to surrender it without consent of the beneficiary and receive a new certificate. It was never in fact surrendered, nor was the beneficiary ever changed, and the question is whether, in an action by the beneficiary, an admission made by the insured some years before the issuance of the policy is substantive evidence to prove the falsity of a statement of fact made by the insured in his application, and upon the truth of which the validity of the policy depends.

It is said by the respondent that this question was set at rest by the ruling of this court in the case of *McGowan v. Supreme Court I. O. F.* 104 Wis. 173, 80 N. W. 603. That action was one brought to recover upon a fraternal benefit certificate issued in June, 1896, upon an application made in the preceding May. In this application the insured stated

that he was in good health at the time the application was made,. and declared that no intentional misstatement had been made therein. By the application and certificate the statements, so far .as material, were made part of the contract. Upon the trial the. defendant company offered generally to prove that the insured had made statements to his fellow workmen as to a cough and an apparently diseased condition of his lungs in the summer and fall of 1895. This testimony was objected to generally, and ruled out. As will be at once perceived, the question whether the insured knew that his answer was false was a material one in the case, and this court held that the evidence offered was admissible to show such knowledge, there being independent proof tending to show the fact of falsity. In connection with this ruling it was stated that the general rule is "that admissions and declarations of the assured made prior to the application and so remote as to be disconnected with any act or fact showing *his then condition of health*, are incompetent as substantive proof to contradict the statements made in the application, as against a third party, who is the beneficiary." This statement of the law is believed to be correct, but it is by no means conclusive upon the question now before us, for quite palpable reasons. The statements in the application which were alleged to be false in that case were statements as to the condition of the applicant's health at the *time of the application,* and it seems very certain that such statements could not, under any rule of evidence, be contradicted by contrary declarations of the assured made years before the application, because both statements might well be literally true. In the present case the statement of the application which is claimed to be false is a statement that the assured *had never had* a certain disease, and, of course, such a statement is entirely inconsistent with a declaration made at any time by the assured to the effect that he had suffered from the disease. Furthermore, the general rule stated in the *McGowan Case*

is the rule which has been laid down and applied in actions upon what are called "old line" policies of insurance; and it is claimed by appellant here that it is not applicable to an action upon a benefit certificate issued by a fraternal order, for the reason that in the latter case the beneficiary has no vested interest during the life of the assured, the latter having full power over the policy until the moment of his death; and hence that his admissions must be binding upon all who afterwards obtain an interest. The contention is a serious one, and it is not without support in the authorities. *Steinhausen v. Preferred Mut. Acc. Asso.* (Sup.) 13 N. Y. Supp. 36; *Smith v. Nat. Ben. Soc.* 51 Hun, 575; *Hansen v. Supreme Lodge K. of H.* 140 Ill. 301, 29 N. E. 1121. Mr. Niblack, in his work on Benefit Societies (2d ed. § 325), while recognizing the rule that in ordinary life insurance the admissions of the assured, when not a part of the *res gestœ,* are inadmissible as against the beneficiary, states that in contracts of mutual benefit insurance such declarations are admissible; the reason for the difference in the rule being stated to be that in the former case the beneficiary has a vested interest during the life of the assured, while in the latter case he has none. Practically the same doctrine is laid down in 2 Bacon, Ben. Soc. (new ed.) § 460. In *Supreme Lodge K. of P. v. Schmidt,* 98 Ind. 374, precisely the opposite view was taken, and it was held that the subsequent admissions of the assured were not admissible, as against the beneficiary in a benefit certificate, even though the assured had the power at any time to change the beneficiaries without consent of the company or the beneficiary. The reason given for the ruling is that the beneficiary was in legal contemplation the owner of the certificate, subject only to the rights of the assured to ultimately substitute other beneficiaries; or, in other words, that the beneficiary had a vested interest subject to the right of the assured to divest that interest by naming another beneficiary in a prescribed manner.

The question has never arisen in this state, and we are at liberty to take such position upon it as seems, upon due consideration, to be best calculated to subserve the ends of justice. That it is an important question cannot be doubted. The great growth of the many fraternal orders which are issuing like certificates is matter of common knowledge. The insurance thus afforded constitutes the only protection which a large class of our citizens are able to provide for their dependent wives and families. The beneficent purpose of these associations cannot be doubted. By their help, and at small cost, many men of small means have been able at death to provide their families with immediate and substantial help, who otherwise would have left nothing behind save an honorable name. The benevolent purpose of these fraternal orders should be borne in mind, and, while legal rules are not to be tested by the poverty nor varied by the dependence of litigants, it may well be that in a doubtful case these considerations will justify the adoption of a construction of the law which will preserve, rather than one which will defeat, these benevolent purposes. The law abhors a forfeiture. The idea that the rights of innocent dependents may be cut off by a casual admission or declaration of the assured, imperfectly understood, perhaps, and indifferently remembered, when premiums have been regularly paid for years, seems repulsive at the best. As we have seen, the doctrine of the admissibility of such declarations is based entirely on the idea that the beneficiary in such a certificate has no interest in it during the life of the assured. If the premise falls, the conclusion goes with it. It may be granted that the premise is correct as the law is laid down in some of the states. In Wisconsin, however, there has existed from early times a principle of the law of life insurance which is unique and at variance with the law in most of the states. This principle is that a person who insures his own life for the benefit of another, and pays the premiums thereon, may (except so far as

the power is limited or taken away by sec. 2347, Stats. 1898, where a married woman is the beneficiary) dispose of the policy by will or in other manner not inconsistent with the terms of the policy, to the exclusion of the beneficiary named therein. *Clark v. Durand,* 12 Wis. 223; *Foster v. Gile,* 50 Wis. 603, 7 N. W. 555, 8 N. W. 217; *Stoll v. Mut. Ben. L. Ins. Co. ante,* p. 558, 92 N. W. 277. This rule places the rights of the beneficiary under such a policy (if not a married woman) on almost identically the same basis as the rights of a beneficiary under a mutual benefit certificate such as the one before us. In neither case can the beneficiary do anything which will prevent the insured from cutting off his rights entirely. Yet it was held by this court in the case of *Foster v. Gile, supra,* that the beneficiary in such a policy had an actual vested interest in the policy during the lifetime of the insured, which interest was subject to be divested or cut off by the act of the insured. *Patterson v. Nat. Prem. Mut. L. Ins. Co.* 100 Wis. 118, 75 N. W. 980; *Elgar v. Equitable L. Ass. Soc.* 113 Wis. 90, 88 N. W. 927. No good reason now occurs to us for holding that the interest of the beneficiary in a mutual benefit certificate is any less substantial than the interest of a beneficiary in an "old line" policy, where the assured pays the premiums. Each is subject to extinction by the act of the insured, and it may be said as reasonably of one as of the other that it may rightly be considered as a vested interest, subject to the right of the insured to divest it.

This scheme of life insurance by fraternal orders is comparatively a recent development, and the contracts which are issued to members and called "benefit certificates" are somewhat unique. The law with regard to them can hardly be called settled, but is yet in a formative state. The aim of these organizations is to protect the families of the members, and this aim ought not to be thwarted if it may reasonably be carried out without violation of legal principles. As said, the benefit certificate is unique as a contract: there may be

said to be three parties to it,—the order, the member, and the beneficiary: an endeavor to name and define the rights and interest of these three parties is perhaps not very helpful, and may be positively confusing. The right of the beneficiary has been sometimes called a mere "expectancy," and the right of the assured has been termed a mere power of appointment, in which the beneficiary has no vested interest. *Hutson v. Jenson,* 110 Wis. 26, 85 N. W. 689. But whatever terms may be applied to the interests of the parties, it must be admitted that for years a contract has been in existence, to which the order and the member have been active parties, and by which during all this time the order has stood pledged to pay to the beneficiary a certain sum of money upon the death of the member without having changed the beneficiary. Certainly, there has been a beneficiary known and ascertained during the whole time. She did not come into existence as a beneficiary at the moment of the death of the assured. She was such from the issuance of the policy. Her interest or right, or whatever it may be termed, was subject to defeat at any moment during the life of the member by his act without her consent. It did not become absolute and indefeasible until the death of the member without having exercised anew his power of appointment. But the fact that the right was subject to the possibility of defeat does not prevent it from being in law a vested right. It is familiar law that interests in land and personal property may be subject to defeat by the happening of a condition subsequent, and yet the interest may be truly vested until the happening of the condition.

Upon a careful consideration of the whole subject we feel inclined to adopt the rule that the beneficiary in a certificate of this nature has so far vested interest therein that the prior declarations of the assured are not admissible in evidence to prove falsity of the statements in the application, unless they be made at or about the time of the application

and are so closely related with and explanatory of some act . or fact showing the then condition of health of the assured as to be a part of the *res gestæ.* When this is not the case, such declarations may be admissible to prove prior knowledge on the part of the assured of the falsity of some statement in the application, where such prior knowledge is a material fact and there is substantive evidence of the falsity of the statement; as was the case in *McGowan v. Supreme Court I. O. F.* 104 Wis. 173, 80 N. W. 603. In the present case the statement offered was not admissible under either rule.

*By the Court.*—Judgment affirmed.